## MARTHA E. FISHER *et al.*

*v.*

## PETER QUACKENBUSH *et al.*

1. AMBIGUITY—*rule as to evidence to explain.* A patent ambiguity in a deed can not be explained or helped by averment and proof, but it is otherwise if it is a latent one. When the description of land, in a deed, is not ambiguous on its face, but is rendered so by extrinsic evidence, showing it equally applicable to two different tracts or interests in the same tract, the ambiguity is latent, and may be explained by evidence *aliunde*.

2. Where a party owns an indefeasible title to the undivided fourth part of a tract of land, and acquires a tax title for the undivided two-thirds of the undivided three-fourths of the same tract, and makes a conveyance of " one-third of the undivided three-fourths " of the tract, there arises a patent ambiguity as to whether the deed passes an interest in the fourth to which he has a good title, or an interest acquired through the tax deed, and it may be shown, by extrinsic evidence, which was intended to be conveyed.

3. EVIDENCE — *to show what title passes by deed.* Where the holder of a perfect title to an undivided fourth of a tract of land, and also of a tax title to another undivided fourth, makes a quitclaim deed of an undivided fourth, the consideration of the deed affords evidence, though not conclusive, which title was intended to be conveyed. If it is of no adequate price for the perfect title, it will be evidence that the tax title was intended to be granted or released.

4. And where the quitclaim deed is made to a party holding a patent title to an undivided fourth of the tract, and the description is identical with the sheriff's deed to the grantor, these facts will afford evidence that a release of the tax title as to the grantee's undivided fourth, only, was intended.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

This was a petition, filed by Martha E. Fisher, Rachel C. Fisher and Lucius G. Fisher, against Peter Quackenbush, Jonathan P. Armstrong, William C. Goudy, John Forsythe, Henry Burwell, James D. Wallace, George A. Townsend and Robert T. Lincoln, for the partition of the S. E. S. E. 22, T. 38 N. R. 14 E. of the third principal meridian, in Cook county, Illinois.

The petitioners claimed two undivided fourths of the premises. There is no dispute but that the title to the tract had been conveyed to Ezekiel R. Hooper, John F. Clements, Daniel Eaton and Charles A. Eaton, as tenants in common, each acquiring an undivided fourth, and the only question arising was as to the interests which Daniel and Charles A. Eaton once held in the premises.

While Daniel and Charles A. Eaton each was possessed of an undivided fourth of the tract, one Bernard A. Stampofski acquired, by purchase, a certain tax certificate, and after the time for redemption expired, obtained a tax deed from the sheriff of Cook county, of an interest in the premises, described as "(except R. R.) the undivided two-thirds of the undivided three-fourths" of the same, which included the interests of said Eatons. Daniel Eaton afterwards conveyed his fourth interest to Stampofski, and one year afterwards Stampofski and wife, by a quitclaim deed, with warranty against acts of the grantors, for the expressed consideration of $50, conveyed to Charles A. Eaton, with other property, an interest described as "(except R. R.) one-third of the undivided three-fourths of," etc., describing the forty-acre tract. Stampofski and wife afterwards, by their special warranty deed, for the consideration of $360, conveyed the undivided one-fourth of the tract to Penoyer L. Sherman, and Charles A. Eaton and wife, by their warranty deed, conveyed to said Penoyer L. Sherman an undivided fourth part of the same tract for the consideration

of $800.   The appellants, by a chain of conveyances, claimed title to two undivided fourths of the tract.

After the appellants had received and recorded their deeds Charles A. Eaton and wife executed a quitclaim deed to John Forsythe, for an undivided fourth part of the forty-acre tract, for the consideration of $100, under which Forsythe claimed a full, undivided fourth interest, averring that Charles A. Eaton held two undivided fourth interests after Stampofski's deed to him, namely, both his own and that which had been originally Daniel Eaton's, and that Stampofski held no interest whatever when he conveyed to Sherman.   The court decreed in accordance with Forsythe's claim, and the complainants appealed.

Mr. J. A. SLEEPER, and Mr. WM. ELLIOT FURNESS, for the appellants.

Messrs. GOUDY & CHANDLER, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The entire tract of land sought to be partitioned was formerly owned by William B. Hite.   He conveyed it to Ezekiel Hooper, Daniel Eaton, Charles A. Eaton and John F. Clements, as tenants in common, each owning an undivided one-fourth.   Only the interests that were in Daniel and Charles A. Eaton are involved in this litigation.   The latter conveyed one undivided one-fourth of the property to Sherman, and that title, through several conveyances, came to Rachel C. Fisher, and whether the undivided one-fourth interest that was in Daniel Eaton is now owned by Martha E. Fisher or John Forsythe, depends partly on the question, whether there is a latent ambiguity in the deed of July 12, 1865, from Stampofski to Charles A. Eaton, which purports to convey "one-third of the undivided three-fourths" of the property. It is conceded, if there is a latent ambiguity in that deed, the present decree must be reversed, because the court rejected important evidence offered on that question.   Counsel make

no issue as to principles of law, but place the defense on the broad ground there is no latent ambiguity in the deed.

The definitions given of ambiguity in legal instruments are so clear there need be no discussion. It is only with the application of the doctrine we are now concerned, and herein consists all the difficulty. We will only restate such rules that have been adopted as will subserve our purpose, as we find them laid down in the elementary works. A patent ambiguity can not be explained, or, as it is stated in the old books, "is never holpen by averment;" but it is otherwise if the ambiguity is latent, and this familiar illustration is given: If A sell his manor of S to B and his heirs, there appears no ambiguity; but if it is shown, by extrinsic evidence, A was possessed of two manors, south S and north S, a latent ambiguity is developed as a matter in fact, and therefore it is said, "it shall be holpen by averment, whether of them it was the party intended should pass." 1 Greenlf. Ev. sec. 297.

In the case at bar, the description in the deed is " one-third of the undivided three-fourths " of the property, and in that there is no ambiguity. It is a deed by an unusual description, yet equivalent to an expression, one undivided fourth of the entire tract of land described. But the evidence outside the deed shows the " undivided three-fourths " of the entire property had been sold for taxes, State and county, and that Stampofski had bought the certificate issued to the purchaser. One-fourth, or " one-third of the undivided three-fourths," had been redeemed from the tax sale, and the sheriff afterwards made Stampofski a deed for the " undivided two-thirds of the undivided three-fourths " of the property. Whether the " one undivided third " that was redeemed was the one-fourth interest owned by Daniel Eaton, is involved in some doubt, but it is not a matter of much importance in the decision of the case, whether it was or not. It is also proven Stampofski owned one undivided fourth of the property by direct conveyance from Daniel Eaton. Thus it is seen, Stampofski owned one-fourth interest by patent title, and claimed, at least, to own one or two " undivided thirds of the undivided

three-fourths " of the property, under a deed from the sheriff, and having conveyed " one-third of the undivided three-fourths " to Charles A. Eaton, an ambiguity is developed as a matter in fact, and the inquiry is forced upon us, " whether of them it was the party intended should pass " by the grant.

It will be observed, the conveyance was by quitclaim deed, with no covenants, except against the acts of the grantors, for a nominal consideration; and whether it shall be held to pass the title to the one-fourth interest the grantor held by an indefeasible title, or one of the two " undivided thirds of the undivided three-fourths," claimed under the tax deed, is a very material matter. The former was of value and the latter may or may not have been of any value. No proof was made as to the regularity of the tax proceedings, and no presumptions will be indulged as to their validity. The ambiguity thus shown to exist is latent, and consists in matter in fact. Any rule of law that would reject evidence of what interest the parties intended should pass by the grant would do great injustice. The effect might be, we can not know certainly, without extrinsic evidence, to make the grantor part with an indefeasible title to a one-fourth interest in a valuable property, when neither he nor the grantee supposed the grantor was doing more than releasing to the owner of the fee of another undivided fourth, a tax title, whatever it was, that the cloud cast upon it might be removed. The law is not so absurdly technical as to cut off all proof in such cases, where it is indispensable to the administration of justice and the prevention of positive wrong. The rule, that the terms of a deed can not be altered, varied or explained by parol, is a wise and salutary one, and has its foundation in the policy of the law, to prevent impeaching titles evidenced by specialties, with testimony of an unreliable character. But where the description in the deed applies with equal exactness to either one of two pieces of property, unless extrinsic evidence is admissible to explain the ambiguity it can not be known which of the two pieces the parties intended should pass by the grant. Illustration readily suggests itself. The grantor owns two

pieces of property of exactly the same description. In the words in the description by which the property is granted, there is no ambiguity; but it appears, from extrinsic evidence, one piece is of great value and the other is of trifling value, or the estates being of equal value, one is held by an absolute title, and the other by a doubtful, or, when put to the test, perhaps a worthless title. What would be an adequate price for one estate would bear no proportion to the real value of the other, or what would be a fair consideration for one would be an exorbitant price for the other.

The hypothetical cases stated come within the reason of the rule, where the uncertainty as to which of the tracts the description given applies to, is produced by evidence outside the deed, it may be explained by the same kind of testimony. That doctrine is applicable to the case we have in hand. The proposition stated by counsel, there being four fourths in every unit, it follows, the fact there is more than one undivided quarter in every tract of land, is not shown by evidence, but appears on the face of the deed itself, is simply a truism. Still, it does not appear, except by testimony, the grantor owned more than one undivided fourth in the property, nor that he held one by an absolute title in fee simple, and the other by a doubtful or perhaps worthless title, or that one was of considerable and the other, by reason of the suspicion resting on the title, of no considerable value. The words of description apply with equal exactness to the one as well as the other, and how can it be known which it was the parties intended should pass by the deed, except by evidence *aliunde?* The case itself is an illustration of the absolute necessity for the rule, to prevent palpable wrong.

The consideration recited in the deed, though not of a conclusive character, is evidence tending to show the true consideration paid, and if that is so, according to the other evidence in the case, it was the full value of the undivided fourth claimed under the tax deed, but no adequate price for the one-fourth of the estate to which the grantor had a perfect title. Our conclusion is, the court erred in rejecting testimony ten-

dered as to which undivided fourth it was the parties understood was to pass by the deed.

But there is another ground upon which the decision may, with great justness, be placed, that is fatal to the claim put forth by Forsythe. He must have known, from the facts within his knowledge, the deed from Stampofski to Charles A. Eaton was made for the purpose of releasing whatever title he may have obtained, under the tax deed, to the undivided fourth to which Eaton had a patent title, and for no other purposes. Evidence offered tends most strongly to show he had actual knowledge of this fact; but, if he did not, the facts appearing on the record and that came to him from other sources were sufficient to put any prudent man on inquiry, and if investigation had been instituted, it would have disclosed to him the truth, as to what was intended by the parties to the deed. The very description used, being "one-third of the undivided three-fourths," following the language in the sheriff's deed, shows, beyond doubt, the parties were dealing in relation to the title supposed to have been acquired under the tax deed. If this was not what the parties were contracting about, how did it happen they adopted the description in the sheriff's deed, one so unusual in itself and not at all employed in conveyancing?

The deed, in form, as we have seen, was a quitclaim, containing no covenants, except against the acts of the grantors, and only recites a nominal consideration. Other facts were communicated to Forsythe, which, when considered in connection with what appears of record, induces the belief, from which there is no escape, that he knew the quitclaim deed from Stampofski to Eaton was a mere release to the owner of the fee of any apparent interest he may have had in the property by virtue of the tax deed. Under the indisputable facts in this case, appearing from the records and otherwise, it is not perceived that Forsythe has any title under this deed from Charles A. Eaton, that he can, in conscience, assert, or that he ought to be permitted to maintain in any court. Charles A. Eaton is dead. If living, his testimony would have been all

important, but it is in proof, that when applied to for a quit-claim deed for his apparent interest in the property, he would entertain no propositions, but referred Forsythe to his agent, with whom the negotiations were conducted.

Assuming the fact, which we think is proven beyond all controversy, that the quitclaim deed was but a release of the tax claim upon the property, that the parties so understood it at the time, and this fact was known to Forsythe, he can assert no claim under it to the property. Eaton, if living, could maintain no title, and Forsythe, standing in his shoes with full notice, has no superior equities.

The decree will be reversed and the cause remanded.

*Decree reversed.*